UNITED STATES OF AMERICA
IN THE DISTRICT COURT FOR THE UNITED STATES
NORTHERN DISTRICT OF ILLINOIS---EASTERN DIVISION

|  |  |  |
|---|---|---|
| **BRENT NOBBE a minor, by and through his** | () | FILED: AUGUST 14, 2008 |
| **Parents and Next Friends, LISA BAYLES and** | () | 08CV4631 |
| **JAMES M. NOBBE and LISA BAYLES** | () | JUDGE GOTTSCHALL |
| **and JAMES M. NOBBE, Individually,** | () | MAGISTRATE JUDGE COLE |
|  | () |  |
| **Plaintiffs** | () | TC |
|  | () | **Case No.** |
|  | () |  |
| **vs.** | () |  |
|  | () |  |
|  | () |  |
| **GENERAL MOTORS CORPORATION, a** | () |  |
| **Delaware Corporation, and BLUE BIRD BODY** | () | **JURY DEMANDED** |
| **COMPANY, a Delaware Corporation,** | () |  |
|  | () |  |
| **Defendants.** | () |  |

## COMPLAINT

Plaintiffs, BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, by their counsel, Frederic W. Nessler, Jack D. Davis, David A. Axelrod, and Robert A. Cohen, for their Complaint against Defendants, GENERAL MOTORS CORPORATION and BLUE BIRD BODY COMPANY, state as follows:

### GENERAL ALLEGATIONS

#### Nature of the Case

1.     This is a negligence and products liability action arising out of the injuries and damages suffered by Brent Nobbe on and after August 27, 2003.  On August 27, 2003, Brent Nobbe was a passenger on a school bus that left the roadway, traveled down a steep embankment adjacent to the roadway, and rolled over.  The school bus was manufactured by the Defendants General Motors Corporation and Blue Bird Body

Company.  Brent Nobbe was twelve years old at the time of this incident.  He sustained extensive injuries in the crash, including brain injury, paraplegia, orthopedic injuries and other multi-system injuries.  Brent Nobbe and his parents, Lisa Bayles and James M. Nobbe, bring this action against the Defendants, General Motors Corporation and Blue Bird Body Company, alleging that the school bus involved in the August 27, 2003 incident was defective and unreasonably dangerous in a number of respects when it left the control of the Defendants.  Plaintiffs also allege that the Defendants were negligent in their design and manufacture of the subject vehicle.

### Parties

2.      Plaintiff, Brent Nobbe ("Brent") is currently 17 years of age.  He resides in Montgomery County, Illinois.

3.      Plaintiff Lisa Bayles ("Lisa") is Brent's mother and resides in Montgomery County, Illinois.

4.      Plaintiff James M. Nobbe ("James") is Brent's father and resides in Montgomery County, Illinois.

5.      Defendant General Motors Corporation ("GMC") is a Delaware corporation with its principal place of business located in the State of Michigan.

6.      Defendant Blue Bird Body Company ("Blue Bird") is a Delaware corporation with its principal place of business located in Georgia.

### Jurisdiction and Venue

7.      Jurisdiction in this case arises under 28 U.S.C. §1332, based on diversity of citizenship between the Plaintiffs and the Defendants, and the amount in controversy exceeding seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) and (c) because Defendants GMC and Blue Bird conduct business and sales activity in this judicial district, and thus are subject to personal jurisdiction in this judicial district.

**Factual Background**

### 1. The Crash

9.      Brent was born September 6, 1990.  As of August 27, 2003 Brent was twelve years of age.  Brent was in good health.  He attended middle school at Vandalia, Illinois community public school district number 203.    August 27, 2003 was a Wednesday.  School had just resumed for Brent.  He rode the school bus to and from school and his home in Van Burensburg, Illinois.  He rode the school bus on Wednesday August 27, 2003.  Eugene Rogers (hereinafter "Rogers") was assigned to drive Brent's school bus---Vandalia Unit Schools' bus number 4.  He drove the school bus on August 27, 2003.

10.      At approximately 7:30 a.m. on August 27, 2003, bus number 4 was traveling in a southerly direction on "Burg Road" in rural Montgomery County, Illinois.  As the bus approached Burg Road's intersection with "Horse Avenue", Rogers heard an audible alarm sounding inside the cab of bus number 4.   The audible alarm was associated with a warning system linked to the braking system for the bus.  There was also a visual component to the bus' brake warning system.  Specifically, there was a warning light located on the bus' dashboard that illuminated contemporaneous with the sounding of the audible alarm.  The activation of the audible alarm and visual warning light indicates a potential loss of braking power to the bus.

11.    The warning light was located on the lower left hand portion of the bus' dashboard in an "L-shaped" instrument panel.    The L-shaped panel was situated at Rogers' seven o'clock position.    Consequently, in order to visualize the illuminated warning light, Rogers was forced to look down and to his left at the portion of the instrument panel where the warning light was located.  To complete this task, he also was required to look around a spoke on the bus' steering wheel.

12.    The L-shaped panel contained a number of additional warning lights and indicators (other than the brake system warning light mentioned *supra*) that related to various systems on the bus.  For example, there were indicator lights that were associated with low coolant levels, high idle speed and engine over-speed.  Thus, the brake system warning light was positioned in a cluster of several warning lights and indicators.

13.    When the brake system warning light and audible alarm activated, Rogers looked down and to his left, around the steering wheel, consequently requiring that he take his eyes off the road.  When he did so, the school bus' right front tire drifted off the right side of Burg Road and onto the road's shoulder.    The bus was traveling at approximately 55 miles per hour at this time and slid on debris.  Rogers could not regain control of the bus.  The bus traveled down a steep embankment and rolled over.  It came to rest at the bottom of a ravine.

14.    There were sixteen people on the bus at the time of the crash--- Rogers and fifteen student passengers.  Rogers was wearing a lap belt restraint.  He sustained non-life threatening injuries in the crash, the most severe of which was a lacerated ear. Other than Rogers' lap belt, there were no seat belts on bus number 4.  The student passengers were unrestrained.

15.     Brent was seated in the outboard position (near the window) in the second to last seat of the bus, on the drivers' side of the bus.  There was a child seated next to him, closer to the bus aisle (the inboard position).  Brent was ejected from his upright and seated position during the crash sequence.  His body and head were slammed against the rigid metal interior structures of the bus.  Brent sustained extensive, multi-system injuries in the crash.   Among other things, he suffered a 113 $cm^3$ subdural hematoma-subarachnoid hemorrhage.

16.     Brent was evacuated from the scene by an air ambulance to a nearby trauma center.  Brent spent the larger part of the following year in hospitals and rehabilitation in order to save his life and restore to him a degree of functionality.

17.     In spite of these heroic efforts, Brent was left a paraplegic.  He has limited ability to attend to his life functions and to communicate.  His vocabulary is restrained to approximately 75 words.  He is confined to a wheelchair and will require care for the rest of his life.

### 2.  GM and Blue Bird's Manufacture of The Bus.

18.     Bus number 4 was manufactured in two stages.  GMC manufactured and assembled the vehicle chassis in May 1997 at its Janesville, Wisconsin plant.  The vehicle chassis is designated by GMC as a "B7".  The B7 chassis was, and is, built for school bus applications.  The B7 is a member of a larger class of vehicle chassis known as the GMT-530.  Once the chassis was assembled, GMC sold it to Blue Bird.  Blue Bird undertook the task of transforming the B7 chassis into an end-product school transportation vehicle.

19.     Blue Bird began manufacturing school transportation vehicles/buses in 1927. It maintains a large share of the market for school buses in North America.  Blue

Bird manufactures all types and classifications of school buses. The school bus at issue in this case was a "Type C" school bus or a "conventional" school bus. The diesel engine is positioned in front of the windscreen, with the entrance door located behind the right front wheels. The hood of the bus has a square or "boxy" appearance. The bus was designed to seat as many as 65 passengers.

20.     In order to complete the final assembly of a school bus, Blue Bird installs sidewall structures, a roof and all of the interior parts of the school bus (not already installed by GMC) to the GMC B7 chassis. The sidewall structures are constructed of rolled sheet metal, as is the roof assembly of the bus. The sidewalls and roof are riveted together. Blue Bird installs the bus' seats. Finally, Blue Bird installs the bus' window frames and glass, doors, emergency exits and other components particular to the school bus (e.g. stop arm assembly and flashing lights). On information and belief, the foregoing is the process Blue Bird utilized in manufacturing the bus in question.

### 3. GM and Blue Bird Negligently Manufactured The Bus and Manufactured an Inherently Dangerous Vehicle.

21.     Automobile manufacturers, including the Defendants herein, maintain a practice of issuing publications called "Technical Service Bulletins" or "TSBs". TSBs are special notices issued by the original equipment vehicle manufacturer to their service dealers. A TSB may be issued if the vehicle manufacturer has seen similar problems with a significant number of its vehicles. In this case, TSBs were issued by GMC and Blue Bird concerning certain mechanical and electrical components of the school bus at issue in this case. Some of these mechanical and electrical components include the steering assembly and the instrument panel/warning light cluster. More specifically, the TSBs addressed (in part) the following:

    (a)    Drivers' comments concerning illumination of an ABS lamp on the instrument panel of GMC/Blue Bird buses. The lamp is located on the L-shaped instrument panel described *supra* at paragraphs 10-12. The illumination of the lamp is attributable to a faulty or improperly adjusted stop-lamp switch.

    (b)    An improperly placed intermediate steering shaft on the GMC/Blue Bird buses that could lead to a loss of steering of the vehicle increasing the risk of a vehicle crash.

\*\*\*   \*\*\*   \*\*\*

By virtue of these TSBs, as well as the existence of other evidence, the Defendants had notice of the fact that a safety hazard was presented to the Plaintiffs and others by certain components of the school bus at issue in this case.

22.    In 1967 and again in 1972, the federal government commissioned researchers at the University of California Los Angeles to conduct a series of crash tests to analyze safety issues related to occupant restraints in school buses involved in collisions or crash sequences. These researchers published the results of the tests and made certain recommendations which were predicated upon the tests' results. Among the researchers' admonishments were:

    (a)    That school bus seats have "high backs" of at least 28 inches.

    (b)    School bus seats should not have rigid protrusions or structures that would serve to cause injury.

    (c)    Seat belts/lap belt configurations would provide substantial protection if used on 28 inch or higher seats.

\*\*\*   \*\*\*   \*\*\*

23.    The UCLA researchers also concluded that "compartmentalization" was an effective means of protection for school bus passengers involved in *certain* types of collisions or crash incidents. The word "compartmentalization", used in this context, is derived from the "compartment" that is created by the configuration of the seats on a

school bus.  Put another way, when a passenger of a school bus is seated in one of the bus' seats, he/she is inside of a seating "compartment" comprised of (a) the seat back behind the passenger (b) the back of the seat immediately in front of the passenger and (c) the bus sidewall.

24.     However, compartmentalization is not an effective means of protection to school bus passengers unfortunate enough to be involved in a rollover event.  Due to the fact that the "compartment" has no "top" or inboard side, it allows a passenger to be displaced from his/her upright and seated position in the event of a rollover occurrence in a school bus.

25.     On April 1, 1977, the United States Department of Transportation adopted Federal Motor Vehicle Safety Standard 222 ("FMVSS 222").  FMVSS 222 applies to school bus occupant protection and specifications for seats on school buses.  FMVSS 222 remains in effect today.  FMVSS 222 does not mandate the use of seatbelts of any type in school buses with a gross vehicular weight in excess of 10,000 pounds.  In other words, FMVSS 222 does not comport with the recommendations of the UCLA researchers. Furthermore, FMVSS 222 sets forth seat height requirements that are nearly 8 inches below the 28 inch seat height recommendation promulgated by the UCLA studies.

26.     On information and belief, as a leader in the school transportation industry in the United States, Blue Bird had actual knowledge of the results of the crash tests conducted at UCLA between 1967 and 1972.   Blue Bird did not follow the UCLA guidelines in manufacturing the bus in question.

27.     On information and belief, GMC and Blue Bird have actively participated in lobbying efforts at the state and federal levels concerning issues which may impact

(either positively or adversely) its business interests.   On information and belief, Blue

Bird directed lobbying efforts to some degree with respect to the enactment of FMVSS

222.  On information and belief, Blue Bird maintained an interest in reducing production

costs and maximizing profits and thus, lobbied against FMVSS 222 including a mandate

that seat belts be installed on school buses.

28.     In addition to disregarding the UCLA findings, GMC and Blue Bird have

violated Illinois school bus safety regulations.   Bus manufactures are required to place or

position certain instruments and gauges on Type I school buses in accordance with

Illinois Administrative Code, Title 92, Chapter 1, Subchapter (e), Sections 440 and 441,

*Minimum Safety Standards for Construction of Type I School Buses*, which provides in

pertinent part:

> "Section 441.APPENDIX G:   Instruments and Instrument Panel through
> Locked Compartment
>
> (a)     INSTRUMENTS AND INSTRUMENT PANEL
>          PROCEDURES/SPECIFICATIONS:
>
>          Shall be equipped with the following non-glare illuminated
>          instruments and gauges mounted for easy maintenance and
>          repair and in such a manner that each is clearly visible to the
>          seated driver. An indicator light instead of a pressure or
>          temperature gauge is permissible.
>
>          ….11) Emergency/service brake indicator.
>
>                          ***    ***    ***

Bus number 4 manufactured by GMC and Blue Bird failed to comply with the

requirements of Sections 440 and 441 in that the brake warning light was not placed in a

manner so that it was clearly visible to the seated driver.

29.    GMC and Blue Bird have also violated federal law governing safety hazards presented by poor or dangerous positioning of vehicle controls, instruments or displays in this regard. The Code of Federal Regulations, 49 C.F.R. § 571.101, Standard No. 101 "Controls and displays" states as its "purpose":

> "The purpose of this standard is to ensure the accessibility and visibility of motor vehicle controls and displays and to facilitate their selection under daylight and nighttime conditions, in order to reduce the safety hazards caused by the diversion of the driver's attention from the driving task, and by mistakes in selecting controls.

Subsection S5.1 (*Location*) of this section mandates that "Under the conditions of S6, each of the following controls that is furnished shall be operable by the driver and each of the following displays that is furnished shall be visible to the driver. Under the conditions of S6, telltales are considered visible when activated." Included among the list of displays is "brake failure warning." 49 C.F.R. § 571.101, Standard 101, S5.1(d). The display for the brake failure warning system was placed on bus number 4 in a location and position such that it was not visible to the driver, Rogers. As a consequence, when the alarm sounded, Rogers' attention was diverted from the task of driving bus number 4 in violation of C.F.R. § 571.101, Standard 101, S5.1(d). The crash resulted.

30.    Illinois law requires appropriate and proper padding of the interior structures of the school bus. 92 Ill.Admin. Code Chap. 1 Sec 440 (r)(2) provides:

> "[t]he passenger compartment of the bus, including the ceiling, shall be free of any visible or concealed projections likely to cause injury. Exposed lapped joints shall be connected and/or treated to reduce likelihood of injury from exposed edges. Materials or components in the passenger compartment located within 59 inches from the floor shall be free of any sharp corner or projections or shall be padded so as to make injury unlikely."

Bus number 4 was constructed of steel and other metal materials. The interior of bus number 4 contained no padding on interior structures to make injury unlikely, in violation of 92 Ill.Admin.Code Ch. 1, Sec. 440(r)(2).

## COUNT I
## STRICT PRODUCTS LIABILITY
## vs. GENERAL MOTORS CORPORATION

1 - 30.  Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, incorporate by reference herein Paragraphs 1 – 30 of the General Allegations in their entirety as Paragraphs 1 – 30 of this Count I.

31.  GMC is strictly liable under the principles of Restatement (Second) of Torts, §§402A and 402B, and Restatement (Third) for design defects and/or manufacturing defects of the school bus at issue in this case.

32.  When the chassis left GMC's control, it was in a defective and unreasonably dangerous condition.  The chassis' dashboard/instrument panel was manufactured and designed in such a way that when a warning light and audible alarm were activated with respect to certain vehicle systems (including the braking system), a driver's attention is diverted from the roadway.  When a drivers' attention is diverted from the roadway, the safety of vehicle passengers is compromised.

33.  GMC is also strictly liable for the defective and unreasonably dangerous condition of the school bus under the "apparent manufacturer" doctrine recognized and established under Illinois law.  GMC is strictly liable for the manufacturing and design defects of the school bus which existed when it left the control of its co-Defendant, Blue Bird.  The bus was not crashworthy when it left Blue Bird's control.  Specifically, and as

set forth *infra*, the school bus was defective and unreasonably dangerous when it left the control of GMC's co-Defendant, Blue Bird in that it did not have adequate or appropriate passenger restraint systems, proper compartmentalization, and/or interior padding/impact force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence.

34.   In this case, Rogers' attention was diverted from the roadway when the brake warning system alerted.  Rogers looked down to his left and around the steering wheel to locate and identify the source of the audible warning.  When he did so, the school bus left the paved surface of the roadway and careened down the steep embankment adjacent to the road.  Consequently, as a direct and proximate result of the defective and unreasonably dangerous condition of the chassis, to wit, the concealed placement of the warning light, the following events occurred:

     (a)   Rogers' attention was diverted from the roadway;

     (b)   Bus number 4 drifted off the paved surface of the road and Rogers lost control;

     (c)   Bus number 4 careened down the steep embankment and rolled over;

     (d)   Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

35.   Furthermore, Brent sustained injuries in the August 27, 2003 crash that were enhanced in degree of severity by reason of the lack of adequate or appropriate passenger restraint systems, proper compartmentalization, and/or interior padding/impact

force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence.  GMC is liable as an apparent manufacturer for the enhanced injuries sustained by Brent in the August 27, 2003 event.

36.    As a direct and proximate result of the defective and dangerous condition of the chassis, Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

37.    The nature and extent of the injuries in this case give rise to significant damages in the form of:

(a)    Medical and care expenses for the Plaintiffs' past and future;

(b)    Lost earnings for Brent into the future;

(c)    Lost earnings for Lisa Bayles and James M. Nobbe, past and future;

(d)    Non-economic damages, including pain and suffering and loss of use of a normal life, past and future;

**WHEREFORE**, Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, pray for judgment for damages in excess of $75,000.00, exclusive of interest and costs, against Defendant GENERAL MOTORS CORPORATION, and for such other relief as this Court may deem just and proper.

## COUNT II
## STRICT PRODUCTS LIABILITY
### vs. BLUE BIRD BODY COMPANY

1 - 30.  Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, incorporate by reference herein Paragraphs 1 – 30 of the General Allegations in their entirety as Paragraphs 1 – 30 of this Count II.

31.     Blue Bird is strictly liable under the principles of Restatement (Second) of Torts, §§402A and 402B, and Restatement (Third) for design defects and/or manufacturing defects of the school bus at issue in this case relating to the location and placement of the brake system warning light.  In this regard, Blue Bird is also liable as a "downstream defendant."

32.     When the chassis left Blue Bird's control, it was in a defective and unreasonably dangerous condition in a number of respects.  The chassis' dashboard/instrument panel was manufactured and designed in such a way that when a warning light and audible alarm were activated with respect to certain vehicle systems (including the braking system), a driver's attention is diverted from the roadway.  When a drivers' attention is diverted from the roadway, the safety of vehicle passengers is compromised.

33.     In this case, Blue Bird installed additional warning lights and audible alarms which corresponded to vehicle systems on the bus specific to its operation as a school transportation vehicle.  In this regard, there was a panel installed to the left of the driver's seat which contained a series of lights and systems.

14

34.    In this case, Rogers' attention was diverted from the roadway when the brake warning system alerted.  Rogers looked down to his left and around the steering wheel to locate and identify the source of the audible warning.  When he did so, the school bus left the paved surface of the roadway and careened down the steep embankment adjacent to the road.  Consequently, as a direct and proximate result of the defective and unreasonably dangerous condition of the chassis, to wit, the concealed placement of the warning light, the following events occurred:

    (a)    Rogers' attention was diverted from the roadway;

    (b)    Bus number 4 drifted off the paved surface of the road and Rogers lost control;

    (c)    Bus number 4 careened down the steep embankment and rolled over;

    (d)    Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

35.    Blue Bird is also strictly liable under the principles of Restatement (Second) of Torts, §§402A and 402B, and Restatement (Third) for design defects and/or manufacturing defects of the school bus at issue in this case that relate to the lack of adequate or appropriate passenger restraint systems, proper compartmentalization, and/or interior padding/impact force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence.  The school bus was not crashworthy to withstand a reasonable and foreseeable event such as the one giving rise to this litigation.

36.     As a direct and proximate result of the non-crashworthy nature and condition of the school bus, Brent sustained injuries in the August 27, 2003 crash that were enhanced in degree of severity by reason of the lack of adequate or appropriate passenger restraint systems, proper compartmentalization, and/or interior padding/impact force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence.  Blue Bird is liable for the enhanced injuries sustained by Brent in the August 27, 2003 event.

37.     Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

38.     The nature and extent of the injuries in this case give rise to significant damages in the form of:

        (a)     Medical and care expenses for the Plaintiffs' past and future;

        (b)     Lost earnings for Brent into the future;

        (c)     Lost earnings for Lisa Bayles and James M. Nobbe, past and future;

        (d)     Non-economic damages, including pain and suffering and loss of use of a normal life, past and future;

**WHEREFORE**, Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, pray for judgment for damages in excess of

$75,000.00, exclusive of interest and costs, against Defendant BLUE BIRD COMPANY, and for such other relief as this Court may deem just and proper.

### COUNT III
### NEGLIGENCE
### vs. GENERAL MOTORS CORPORATION

1 - 30.  Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, incorporate by reference herein Paragraphs 1 – 30 of the General Allegations in their entirety as Paragraphs 1 – 30 of this Count III.

31.     GMC is liable for common law negligence.  GMC did not act as a reasonably careful and prudent manufacturer acting under the same or similar circumstances.  Specifically, GMC was negligent in designing the chassis dashboard/instrument panel in such a manner so as to distract a driver's attention from the roadway when any one of several vehicle warning systems activated.  In this case, the warning system which corresponded to the school bus braking system activated, causing Rogers to look down and away from the roadway at a partially concealed instrument panel.  This was a reasonably foreseeable occurrence.

32.     In this case, Rogers' attention was diverted from the roadway when the brake warning system alerted.  Rogers looked down to his left and around the steering wheel to locate and identify the source of the audible warning.  When he did so, the school bus left the paved surface of the roadway and careened down the steep embankment adjacent to the road.  Consequently, as a direct and proximate result of the defective and unreasonably dangerous condition of the chassis, to wit, the concealed placement of the warning light, the following events occurred:

(a)     Rogers' attention was diverted from the roadway;

(b)     Bus number 4 drifted off the paved surface of the road and Rogers lost control;

(c)     Bus number 4 careened down the steep embankment and rolled over;

(d)     Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

33.     GMC's violation of the applicable regulatory/statutory provisions is negligence *per se*.  GMC violated the applicable federal and state regulatory provisions concerning placement of the warning lamps/visual alert systems on the school bus.  The visual warning lamp was not placed in a manner so as to be clearly visible to Eugene Rogers.

34.     Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

35.     The nature and extent of the injuries in this case give rise to significant damages in the form of:

(a)     Medical and care expenses for the Plaintiffs' past and future;

(b)     Lost earnings for Brent into the future;

(c)     Lost earnings for Lisa Bayles and James M. Nobbe, past and future;

18

(d)    Non-economic damages, including pain and suffering and loss of use of a normal life, past and future;

**WHEREFORE**, Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, pray for judgment for damages in excess of $75,000.00, exclusive of interest and costs, against Defendant GENERAL MOTORS CORPORATION, and for such other relief as this Court may deem just and proper.

### COUNT IV
### NEGLIGENCE
### vs. BLUE BIRD BODY COMPANY

1 - 30.  Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, individually, incorporate by reference herein Paragraphs 1 – 30 of the General Allegations in their entirety as Paragraphs 1 – 30 of this Count IV.

31.    Blue Bird is liable for common law negligence.  Blue Bird did not act as a reasonably careful and prudent manufacturer acting under the same or similar circumstances.  Specifically, Blue Bird was negligent in designing the school bus in such a manner so that it could not reasonably withstand a collision or crash and maintain the safety of the bus' occupants.  The school bus was not crashworthy.  The August 27, 2003 rollover occurrence was reasonably foreseeable.

32.    Blue Bird was negligent in one or more of the following respects:

(a)    Failing to install or supply appropriate and proper occupant/passenger restraint systems to restrain student passengers in their seated positions;

19

(b)     Failing to install or provide appropriate and proper padding on metal structures and components of the interior of the school bus to eliminate or mitigate injury to passengers during the course of a crash sequence; and

(c)     Failing to install or provide appropriate and proper impact force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence.

33.     Blue Bird's violation of the applicable regulatory/statutory provisions is negligence *per se*.  Blue Bird violated the applicable federal and state regulatory provisions concerning placement of the warning lamps/visual alert systems on the school bus.  The visual warning lamp was not placed in a manner so as to be clearly visible to Eugene Rogers.  Furthermore, the school bus was designed and manufactured in such a manner so as to violate the applicable regulatory provisions regarding interior construction and/or padding of metal structures in the interior of the bus.

34.     In this case, Rogers' attention was diverted from the roadway when the brake warning system alerted.  Rogers looked down to his left and around the steering wheel to locate and identify the source of the audible warning.  When he did so, the school bus left the paved surface of the roadway and careened down the steep embankment adjacent to the road, rolling over at least once.  During the rollover occurrence, Brent was ejected from his upright and seated position.  His head and body were slammed against the rigid metal interior of the school bus.  He sustained severe multi-system injuries.

35.     As a direct and proximate result of Blue Bird's negligence and the non-crashworthy nature of the school bus, Brent sustained injuries to an enhanced and amplified extent.  But for Blue Bird's negligence as aforesaid, Brent's injuries would have been less severe or minimized.  Had Brent been restrained by an appropriate and

proper passenger restraint-seat belt configuration, he would have remained in his seated position.  Had there been appropriate and proper interior padding and impact force reducing structures to eliminate or mitigate injury to passengers during the course of a crash sequence, Brent's injuries would have been significantly less severe.

36.    Brent sustained massive and severe closed head injuries and other injuries which have left him permanently disabled and unable to care for himself.  In addition, Brent and his caregivers have incurred and will continue to incur medical expenses attendant to Brent's care.  Finally, Brent and his family have experienced lost earnings, and, will continue to experience lost earnings into the future.

37.    The nature and extent of the injuries in this case give rise to significant damages in the form of:

    (a)    Medical and care expenses for the Plaintiffs' past and future;

    (b)    Lost earnings for Brent into the future;

    (c)    Lost earnings for Lisa Bayles and James M. Nobbe, past and future;

    (d)    Non-economic damages, including pain and suffering and loss of use of a normal life, past and future;

**WHEREFORE**, Plaintiffs BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE pray for judgment for damages in excess of $75,000.00, exclusive of interest and costs, against Defendant BLUE BODY COMPANY, and for such other relief as this Court may deem just and proper.

**Jury Demand**

Plaintiffs hereby invoke their rights to trial by jury as to all counts and issues pled against the Defendants in this cause.

BRENT NOBBE, a minor, by and through his Parents and Next Friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, Individually

By: _____ /s/ David A. Axelrod _____
                    One of Their Attorneys

David A. Axelrod
Robert A. Cohen
David A. Axelrod & Associates, PC
20 S. Clark Street, Suite 2200
Chicago, Illinois 60603
(312) 782-4600
(312) 782-3015 (Facsimile)
www.axelrodpc.com
daa@axelrodpc.com
rac@axelrodpc.com

Frederic W. Nessler
Jack D. Davis
Law Offices of Frederic W. Nessler
& Associates, Ltd.
536 N. Bruns Lane, Suite One
Springfield, Illinois 62702
(217) 698-0202
(217) 698-0203 (Facsimile)
www.nesslerlaw.com
fwn@nesslerlaw.com
jdavis@nesslerlaw.com