UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENT NOBBE a minor by and through his next friends, LISA BAYLES and JAMES M. NOBBE and LISA BAYLES and JAMES M. NOBBE, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS CORPORATION, a Delaware Corporation and BLUE BIRD BODY COMPANY, a Delaware Corporation, <br><br> Defendants. | Case No. 08 CV 4631 <br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendant Blue Bird Body Company ("Blue Bird") has filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer the above captioned case to the United States District Court for the Central District of Illinois. Blue Bird's motion was joined by the other defendant, General Motors Corporation ("GMC"). For the following reasons, Blue Bird's motion is granted. Also pending before this court is a motion to dismiss filed by Defendants. Because this matter is being transferred, this court declines to rule on the motion to dismiss.

### I. BACKGROUND

This case arose as a result of an allegedly defective school bus. Plaintiff Brent Nobbe, then twelve years old, was riding on the bus on August 27, 2003, on a rural road in Montgomery County, Illinois, in the Central District of Illinois, when the bus left the roadway, traveled down an adjacent steep embankment, and rolled over. Nobbe sustained serious injuries in the accident.

The Plaintiffs filed two lawsuits in Illinois state court, the first on September 18, 2003 and the second on July 26, 2005. The parties to the first case settled and the Plaintiffs voluntarily

1

dismissed the second case. The Plaintiffs then filed the instant products liability and negligence lawsuit in this court on August 14, 2008.

All of the Plaintiffs are citizens of Illinois. Defendant Blue Bird is a Delaware corporation with its principal place of business in Georgia. Defendant GMC is a Delaware corporation with its principal place of business in Michigan.

The bus involved in the crash was manufactured in two stages. GMC manufactured and assembled the vehicle chassis at its Janesville, Wisconsin plant. Blue Bird purchased the chassis and installed the sidewall structures, a roof, and all interior parts of the school bus at Blue Bird's facility in Fort Valley, Georgia.

## II. ANALYSIS

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). As the moving party, Defendant Blue Bird must show that "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) (citations omitted). "The movant . . . has the burden of establishing by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219–20 (citations omitted).

"In determining whether a forum is more convenient, the court must consider the private interests of the parties as well as the public interest of the court." *Aldridge v. Forest River, Inc.*,

2

436 F. Supp. 2d 959, 960 (N.D. Ill. 2006) (citations omitted).  The factors related to the parties' private interests include: "(1) the plaintiff's choice of forum, (2) the situs of material events, (3) the convenience of the parties, and (4) the convenience of the witnesses." *Id.*  The relative ease of access to the sources of proof is another factor courts may consider in this analysis. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 774 (N.D. Ill. 1998) (citations omitted).

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis . . . ." *Coffey*, 796 F.2d at 220 (citations omitted).  This inquiry is directed to the "efficient administration of the court system." *Id.*  With respect to the interest of justice, the court must consider "the transferor and transferee courts' familiarity with the applicable law and the effect of transfer on the efficient administration of justice." *Aldridge*, 436 F. Supp. 2d at 962 (citations omitted).

### B.  Venue and Jurisdiction

The parties do not dispute that venue and jurisdiction in this case are proper in both this court and the United States District Court for the Central District of Illinois.  The first two requirements to transfer venue are satisfied.

### C.  The Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is entitled to substantial weight. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).  But "[w]here . . . the plaintiff is not a resident of the forum district, this factor is given no additional weight and is merely another factor to consider along with the others." *H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.*, 979 F. Supp. 627, 630 (N.D. Ill. 1997) (citations omitted).  Plaintiffs do not reside within this forum, but in Montgomery County, Illinois, within the Central District.  Plaintiffs' selection of this forum weights only slightly against transfer.

### D. The Situs of Material Events

"Material events are those that give rise to the cause of action." *Aldridge*, 436 F. Supp. 2d at 961. This is a products liability and negligence case. To prevail, a plaintiff must prove generally that the plaintiff was injured, and that the product was unreasonably dangerous when it left the manufacturer, and that the product proximately caused the injury. *See Gallee v. Sears, Roebuck & Co.*, 374 N.E.2d 831, 834 (Ill. App. Ct. 1978). Such cases often focus primarily on the design and manufacture of the product, which has led some courts to observe that the situs of material events is where the product was produced, and not necessarily where the accident occurred. *See Aldridge*, 436 F. Supp. 2d at 961 ("The material events giving rise to each of [Plaintiff's] claims focus on the manufacture of the [allegedly defective product] and not on the accident itself. These are the events that give rise to plaintiff's claims of strict liability and negligent manufacture."); *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000) ("[T]he location of the *accident* revealing the allegedly defective product is a red herring for transfer analysis in cases where the plaintiff is suing for the allegedly defective *design and manufacture* of the product."). Nevertheless, the location of the accident is still relevant to the issues of proximate causation, and possibly to the issue of the magnitude of resulting injury.

The bus was manufactured and assembled in Janesville, Wisconsin and Fort Valley, Georgia, neither of which is in this forum or the Central District. Plaintiffs argue, based on *Aldridge* and *Mohamed*, that this factor is not relevant for forum selection purposes, since the design and manufacture occurred elsewhere. Based on the facts of this case, however, the court cannot agree that *Aldridge* and *Mohamed* are applicable. First, although products liability cases may focus *primarily* on the design and manufacture of the product, proximate causation is also at

issue, as is the amount of actual damages suffered by Plaintiffs, which makes the location of the accident a situs of some material events. Second, when the Central District and Northern District are compared to each other, it is clear that the Northern District has no connection to this case, other than that the lawsuit was filed here.

Because the Central District has a greater connection to this case, this factor favors transfer.

### E.  The Convenience of the Parties

The court should consider the parties' "respective residences and their ability to bear the expenses of litigating in a particular forum." *Hanley*, 6 F. Supp. 2d at 776. The convenience to counsel is not a factor to be considered in a § 1404 transfer analysis. *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (citations omitted). Plaintiffs reside near the Springfield courthouse in the Central District of Illinois, but of course, Plaintiffs nevertheless chose to file this case in the Northern District. Blue Bird will be inconvenienced as a result of travel to either Springfield or Chicago. Blue Bird provides no argument that either is more inconvenient than the other, though it clearly prefers the Central District, even though travel to and from Chicago is generally easier than travel to and from Springfield; virtually every flight in and out of Springfield is routed through Chicago, Illinois. *See* David A. Axelrod Aff. at 11 (Pls.' Resp. Ex. D) (Doc. No. 31-5). This factor weighs neither for nor against transfer.

### F.  The Convenience of the Witnesses

The convenience to third-party witnesses is a significant factor. *See First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006) ("The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer."); *but see In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003) (finding

5

inconvenience to witnesses, but still retaining Northern District jurisdiction due to convenience to SEC regional office). When the court is examining the convenience of witnesses, the parties are to provide the court with a statement of the key witnesses to be called and a general statement of their testimony. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167–68 (N.D. Ill. 1995) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). "The court, in assessing any inconvenience to potential witnesses, looks beyond the number of witnesses to be called and examines the nature and quality of the witnesses' testimony with respect to the issues in the case." *Aldridge*, 436 F. Supp. 2d at 961–62.

Blue Bird points to several witnesses located in the Central District who have information regarding the crash and the condition of the bus after the crash. Plaintiffs attempt to minimize the importance of these witnesses, but Plaintiffs admit themselves that nearly every witness they intend to call is located outside of this district, and that several are located in the Central or Southern District, in locations close to Springfield.[1] Plaintiffs contend that the location of witnesses in the Central and Southern Districts is unimportant since any witness located within Illinois may be subpoenaed to this courthouse. This argument misunderstands the nature of the inquiry into the convenience of witnesses; the issue is the *convenience* of the witnesses to be able to appear at the trial, not the ability of the parties to compel witnesses to appear. It cannot be disputed that the many witnesses located nearer to Springfield will be less inconvenienced if a trial is held in the Central District.

Plaintiffs point to witnesses who either currently work or formerly worked for GMC in Janesville, Wisconsin, and who may have relevant information about the design and manufacture of the bus in question. Janesville is within the subpoena power of this court, but is outside of the

---

[1] Several proposed witnesses are located in Fayette and Effington Counties, which are within a one to two hour drive of the Central District courthouse in Springfield.

6

subpoena power of the Central District. Plaintiffs provide a list of nine witnesses who may be located in Janesville, but the description of each of these potential witnesses' likely testimony is identical and terse: *See* David A. Axelrod Aff. ¶ 6 ("[Name of witness] will testify regarding the design and manufacture of the bus chassis.") (Pls.' Resp. Ex. D). Likely some witnesses from Janesville could have relevant information since the bus chassis was designed there, but the court has no manner of determining if all nine will be necessary. Furthermore, it seems far more likely that expert witnesses will be the source of information regarding the design and manufacture of the bus, and Plaintiffs have already identified likely experts who will be testifying on the same topic identified for these Janesville witnesses. In any event, were this case transferred to the Central District, Plaintiffs would still be able to subpoena these witnesses for depositions, *see* Fed. R. Civ. P. 45(b)(2), and although live testimony is preferable, deposition testimony would be admissible if a witness refused to make herself available at trial. Fed. R. Evid. 804(a).

Both parties identify witnesses for whom a trial in the Central District would be more convenient. Though Plaintiffs identify witnesses from Janesville who may find a trial in Chicago to be more convenient, Plaintiffs also point to expert witnesses who will testify on the same topics, and who are from neither forum, which undercuts the significance of the Janesville witnesses. This factor weighs in favor of transfer.

### G. Relative Ease of Access to Sources of Proof

This factor is not important in this case since the evidence will be primarily from documents (scattered throughout several jurisdictions, including Georgia, Illinois, Michigan, Wisconsin, Ohio, South Carolina, Missouri, Virginia, and Arizona), expert reports, and testimony. Such evidence is portable. *See Chem. Waste Mgmt, Inc. v. Sims*, 870 F. Supp. 870,

7

876 (N.D. Ill. 1994) ("[T]he court is satisfied that each party can easily bring to this district those documents that are not here already."). This factor does not militate for or against transfer.

### H. The Courts' Familiarity with the Applicable Law

Illinois law will apply in this case. Both this court and the United States District Court for the Central District of Illinois are equally familiar with Illinois law. As noted by both parties, this factor does not militate for or against transfer.

### I. The Efficient Administration of Justice

The efficient administration of the court system is also to be considered. The 2007 Federal Court Management Statistics Report indicates that the median number of months from filing to disposition of civil cases in the Northern District is 6.2 months, compared to 9.1 months in the Central District. But the median number of months from filing to trial is 29.7 months in the Northern District, and 29 months in the Central District. These statistics are nearly identical, and this factor does not militate for or against transfer.

## III. CONCLUSION

Having weighed all the relevant factors in this case, Blue Bird has satisfied its burden. This conclusion is primarily based on the convenience to the potential witnesses, the Central District's connection to some of the underlying events giving rise to this suit, and this forum's lack of any connection to this matter. The motion to transfer venue is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: May 27, 2009